# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SCHRADER ELECTRONICS, LTD. and
SCHRADER ELECTRONICS, INC.,

        *Plaintiffs*,

v.

SENTECH, INC.,

        *Defendant*.

_____/

Case No. 2:10-cv-13127-PDB-VMM

Judge Paul D. Borman
Magistrate Judge Virginia M. Morgan

Gerald E. McGlynn, III (P-41149)
Brian S. Pickell (P-57411)
BLISS MCGLYNN, P.C.
2075 West Big Beaver Road, Suite 600
Troy, MI 48084-3443
Telephone: 248-649-6090
E-mail: gemclgynn@ipdirection.com
*Attorneys for Plaintiffs*

Kamron K. Lessani (P63238)
Joseph L. Konheim (P34317)
BLUM, KONHEIM, ELKIN & CEGLAREK
15815 West Twelve Mile Road
Southfield, MI 48076-3043
Telephone: 248-552-8500
E-mail: blumkonheim@sbcglobal.net

Brian L. Jackson (TX Bar No. 00794015)
LAW OFFICE OF BRIAN L. JACKSON
1302 Waugh Drive #582
Houston, TX 77019
Telephone: 713-522-5766
E-mail: brian@brianjacksonlaw.com

Tina M. Lessani (CA Bar No. 176629)
LESSANI & LESSANI LLP
163 Cypress Point Road
Half Moon Bay, CA 94019
Telephone: 650-712-0420
E-mail: tina@lessanilaw.com
*Attorneys for Defendant*

_____/     _____/

# SCHRADER'S BRIEF IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                1.      Sentech, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                2.      The Schrader Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        B.      Sentech's Activities in this Forum Have Harmed
                and Will Continue to Harm Schrader . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

                1.      Federal Circuit law is controlling,
                        rather than the law of the regional circuit. . . . . . . . . . . . . . . . . . . . . . 6

                2.      The Federal Circuit's test for specific personal jurisdiction . . . . . . . . . . . . . .7

        B.      Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

                1.      Sentech has purposely directed its activities at residents of this forum. . . . . . .8

                        a.      Sentech's continuous and systematic contact with
                                this forum harmed Schrader by triggering
                                contractual demands to indemnify certain customers. . . . . . . . . . . . 10

                        b.      Michelin's obligations to mark licensed products
                                sold in this forum is an undertaking related to the
                                enforcement of the patents-in-suit. . . . . . . . . . . . . . . . . . . . . . . . . .11

                2.      The claim arises out of or relates to the activities in the forum. . . . . . . . . . .13

                3.      The assertion of personal jurisdiction is reasonable and fair. . . . . . . . . . . . .14

                        a.      There is no burden upon Sentech litigating this dispute here. . . . . . .14

b.     Michigan has a strong interest in adjudicating this dispute here. . . . 15

c.     Schrader needs this dispute resolved now and cannot
tolerate further interference by Sentech in the marketplace. . . . . . . 15

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## <u>TABLE OF AUTHORITIES</u>

### <u>*Case Law*</u>

<u>Akro Corp. v. Luker</u>
45 F.3d 1541, 1543 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

<u>Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.</u>
552 F.3d 1324, 1329 (Fed. Cir. 2008) (*cert. denied*) 129 S.Ct. 2796 (2009) . . . . . . . . . . . . . .7, 8, 13

<u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>
223 F.3d 1082, 1088 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

<u>Bonito Boats, Inc. v. Thundercraft Boats, Inc.</u>
489 U.S. 141, 162, 109 S.Ct. 971, 983, 9 U.S.P.Q.2d 1847 (1989) . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Breckenridge Pharmaceutical, Inc. v. Metabolite Labs, Inc.</u>
444 F.3d 1356, 1362 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

<u>Burger King Corp. v. Rudzewicz</u>
471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

<u>Campbell Pet Co. v. Miale</u>
542 F.3d 879, 886 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

<u>Caulder v. Jones</u>
465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) . . . . . . . . . . . . . . . . . . . . . . . . .9, 10, 11

<u>Dudnikov v. Chalk and Vermillion Fine Arts Inc.</u>
514 F.3d 1063 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

<u>Gart v. Logitech, Inc.</u>
254 F.3d 1334, 1345-47 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

<u>Green v. Wilson</u>
455 Mich. 342, 350, 565 N.W.2d 813, 816 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

<u>Inamed Corp. v. Kuzmak</u>
249 F.3d 1356, 1360 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

<u>Int'l Shoe Co. v. Washington</u>
326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 9

<u>Neogen Corp. v. Neo Gen Screening, Inc.</u>
282 F.3d 883 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.
148 F.3d 1355, 1360 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Silent Drive, Inc. v. Strong Indus.
326 F.3d 1194, 1201 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 8

Trintec Indus. v. Pedre Promotional Prods.
395 F.3d 1275, 1282 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7


**_Statutes_**

28 U.S.C. §2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

35 U.S.C. § 287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_


**_Other Citations_**

Patent Investment Trusts: Let's Build a Pit to Catch the Patent Trolls
6, N.C.J.L & TECH. 367 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

151 CONG. REC. E1160-01 (Daily Ed. June 8, 2005)
Statement of Rep. Howard Berman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

David G. Barker, Troll or No Troll? Policing Patent Usage with an Open Post-Grant Review
2005 Duke L.&TECH REV. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

William M. Bulkeley, Court play: Aggressive Patent Litigants Pose
Growing Threat to Big Business, WALL ST. J., Sept. 14, 2005 at A1 . . . . . . . . . . . . . . . . . . . . . . .3

Michael T. Burr**,** Reinventing the Patent Act, CORP. L. TIMES, Oct. 2005 at 38 . . . . . . . . . . . . . . 3

James Kanter, Ownership of Ideas is High Stakes Game
Patent Battles Shake Global Economy, INT'L HERALD TRIB., Oct. 3, 2005 at 3 . . . . . . . . . . . . . 3

Morag MacDonald, IP, IT and Telecoms: Beware of the Troll,
LAWYER, Sept. 26, 2005, at 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Patent Reform Act of 2005, H.R. 2795, 109th Cong. (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## <u>ISSUES PRESENTED</u>

Whether Defendant's Motion to Dismiss should be denied and this Court should exercise personal jurisdiction over Sentech where:

1.  Sentech engaged in systematic and continuous contact with this forum that has resulted in harm to Schrader because it triggered contractual obligations for Schrader to indemnify its customers from Sentech's charges of infringement;

2.  Sentech's licensee must mark products sold in this forum with the patent numbers pursuant to 35 U.S.C. § 287 as a part of an enforcement obligation under the license agreement;

3.  These acts constitute "other activities" sufficient to trigger personal jurisdiction in this District; and

4.  Sentech has not presented a compelling case that the presence of other considerations would render jurisdiction unreasonable.

Schrader answers: Yes.

## I.      INTRODUCTION

The Court of Appeals for the Federal Circuit has held that a patent owner may "*without more*" send cease-and-desist letters to a suspected infringer without being subjected to personal jurisdiction in the suspected infringer's home state. Breckenridge Pharmaceutical, Inc. v. Metabolite Labs, Inc., 444 F.3d 1356. 1362 (Fed. Cir. 2006) (emphasis added). Sentech has moved to dismiss this case on the basis that this Court cannot exercise personal jurisdiction over it where there is nothing more than cease-and-desist letters or offers to license the patents-in-suit on which to base this jurisdiction. The facts are not remotely as simple as Sentech presents them. Conversely, Sentech's actions have had implications far beyond sending cease-and-desist letters.

Schrader brought this declaratory-judgment action in the Eastern District of Michigan because it resides here and has a principle place of its business here. This is the forum in which the accused infringing activity is conducted. Most, if not all, of the relevant documents and things as well as knowledgeable Schrader witnesses are located in this jurisdiction. All of Schrader's customers are located or have a significant place of business here. Most importantly, this is the forum where the effects of Sentech's conduct and the related harm to Schrader are directly felt.

Personal jurisdiction over Sentech is appropriate because Sentech's conduct has harmed Schrader by triggering contractual obligations of indemnification toward Schrader's customers (that are also located in this District). Since Sentech's actions were expressly aimed at Michigan and the injury to Schrader was felt in Michigan, it is reasonable and fair to cause Sentech to appear and defend in this forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Moreover, Sentech's license with Michelin North America imposes obligations upon Michelin to "mark" the products it sells in this District with the patent numbers under 35 U.S.C. § 287. This obligation to mark the products with the patent numbers is an undertaking that

relates to Sentech's ability to obtain damages via enforcement of the patents.  In addition, Sentech has presented no evidence and made no arguments that there are other considerations that would render jurisdiction in this District unreasonable.

The relevant facts, taken as a whole, dictate that this Court should exercise personal jurisdiction over Sentech under Federal Circuit law in view of the binding authority of the United States Supreme Court.  Accordingly, Defendant's Motion to Dismiss should be denied.

## II.   BACKGROUND

### A.   The Parties

#### 1.   *Sentech, Inc.*

The Defendant, Sentech, Inc. (Sentech) is the owner of the four patents-in-suit (see Exhibits 2 – 5).  Sentech interprets these patents as covering monitoring systems and subcomponents thereof that are used to sense pressure in an automotive tire.  These systems are commonly referred to as tire pressure monitoring systems or TPM systems.  TPM systems are federally mandated for all vehicles sold in the United States (¶4 – 5 Wacker Declaration, Exhibit 6).  Sentech is a Wisconsin corporation that has a single office located in the town of Appleton.  On information and belief, Sentech has only two employees.  Sentech manufactures and sells no products.  It has no engineering, no sales, and no marketing staff.  It is essentially a "non-practicing entity" as that term relates to the patents-in-suit.  On information and belief, Sentech's only apparent assets are the patents-in-suit, and its only apparent business is sending demand letters to third parties alleging infringement of the patents-in-suit in an attempt to coerce licensing fees from them (¶10 – 11 Wacker Declaration, Exhibit 6).  Non-practicing entities (those that do not make or sell anything)

like Sentech are commonly referred to as "patent trolls."[1]  As explained in greater detail below, Sentech's actions in attempting to enforce the patents-in-suit have harmed and will continue to harm Schrader in this forum in a way that justifies the exercise of personal jurisdiction.

### 2.     *The Schrader Plaintiffs*

The Plaintiffs are Schrader Electronics, Ltd. and Schrader Electronics, Inc.  Both companies will be collectively referred to herein as "Schrader."  Schrader has a principle place of business located in Auburn Hills, Michigan.  Schrader is a leading manufacturer of devices designed to monitor the pressure in an automotive tire and is the primary source supplier of these devices to Ford, GM, and Chrysler as well as other original equipment manufacturers of automotive vehicles (OEMs) that employ these devices in this district.

The Auburn Hills office serves as the U.S. headquarters for Schrader's sales and marketing efforts and also includes logistic support, engineering, quality labs, and some development activity. Schrader employs a staff of engineers at the Auburn Hills office who are responsible for development, integration and deployment of the accused products to Schrader's customers.  To this end, Schrader's local system and application engineers work directly with the engineering staff of the OEMs located in this forum.  The accused devices, engineering drawings, specifications, and sales contracts related to the accused devices are all available in the Auburn Hills office (¶3 – 9 Wacker Declaration, Exhibit 6).  Thus all evidence necessary to prove Sentech's charges of

---

[1] Comment, <u>*Patent Investment Trusts: Let's Build a Pit to Catch the Patent Trolls*</u>**,** 6, <u>N.C.J.L & TECH. 367 (2005)</u>. Quoting Peter Detkin, the Assistant General Counsel for Intel Corp.; See also 151 CONG. REC. E1160-01 (Daily Ed. June 8, 2005) Statement of Rep. Howard Berman, *available at* <u>2005 WL 1357348</u>; David G. Barker, <u>*Troll or No Troll? Policing Patent Usage with an Open Post-Grant Review*, 2005 Duke L.&TECH REV. 9;</u> William M. Bulkeley, *Court play: Aggressive Patent Litigants Pose Growing Threat to Big Business*, WALL ST. J., Sept. 14, 2005 at A1; Michael T. Burr**,** *Reinventing the Patent Act*, CORP. L. TIMES, Oct. 2005 at 38; James Kanter, *Ownership of Ideas is High Stakes Game*; *Patent Battles Shake Global Economy*, INT'L HERALD TRIB., Oct. 3, 2005 at 3, *available at* 2005 WLNR 15569040; Morag MacDonald, *IP, IT and Telecoms: Beware of the Troll*, LAWYER, Sept. 26, 2005, at 26, *available at* 2005 WLNR 15209913 (Discussing patent trolls' actions in Europe).

infringement, and defend against them, and the Schrader personnel who are most knowledgeable about the accused products are located in this forum.

### B.      Sentech's Activities in this Forum Have Harmed and Will Continue to Harm Schrader

While Sentech began to assert its patent portfolio against Schrader-related companies as early as June 2002 (¶16 – 18 Complaint, Exhibit 1) for purposes of this Motion, Sentech began its campaign of enforcement against the Plaintiffs in March of 2009.  At that time, Sentech began a continuous and systematic effort to coerce licensing fees from Schrader as a means of avoiding the cost of threatened litigation.  (March 16, 2009 letter from counsel to Sentech, Exhibit 7; February 4, 2010 letter from counsel to Sentech, Exhibit 8) (¶¶16 – 20 Complaint, Exhibit 1).

On February 23, 2010, Schrader responded to Sentech's earlier letters.  In this response, counsel for Schrader disputed that Schrader's products infringed any of the patents-in-suit and asserted that Sentech's patents were invalid.  Moreover, counsel for Schrader stated, "Since any assertion that my client's products infringe your client's patents is clearly baseless, and any licensing opportunities with respect to these patents are unattractive, I must respectfully insist that you do not contact my client again to seek a license or the like.  Any further assertion that your client's patents 'cover' my client's products may result in the filing of a declaratory judgment action, not only seeking a ruling of non-infringement, but also invalidity of your client's patents."  (February 23, 2010 letter from counsel for Schrader, Exhibit 9; ¶21 Complaint, Exhibit 1).  Thus, Sentech was put on notice as early as February 2010 that its actions could trigger a suit for declaratory judgment.  Yet, Sentech was not dissuaded from its campaign of coercive conduct.

Thereafter, the parties continued to exchange correspondence disputing the positions taken by the other.  (¶¶22 – 24 Complaint, Exhibit 1; letters exchanged by the parties, Exhibit 10 – 12).

Importantly, in each correspondence Sentech reasserted its intention to enforce its intellectual-property rights.

In May of 2010, Sentech broadened its enforcement strategy by sending threatening letters to Schrader's customers. GM, Ford, Subaru, Kia Motor, Hyundai, and Mitsubishi have all received cease-and-desist letters from Sentech alleging that Schrader's products infringe the patents-in-suit. (See Sentech's charges of infringement at Exhibits 13, 14, 15, 16 17 and 18.) GM and Ford are headquartered in this District. Subaru, Kia Motors, Hyundai and Mitsubishi each have a significant presence in this District (¶14 Wacker Declaration, Exhibit 6). Sentech offered each of these OEMs a license covering *automotive vehicles*, but expressly excluding the TPM systems or their subcomponents, per se. (See, e.g., Definitions of Licensed Products and ¶1 - 2, Exhibit 19.) Thus, a license taken by the OEM under these terms would not extend to Schrader's products and both Schrader and its customers would be required to take a license under the patents. Each license also obligated the OEMs to mark their vehicles with the patent numbers pursuant to 35 U.S.C. § 287. (See ¶7, Exhibit 19.) As explained below, marking is an obligation related to the enforcement of the patents and is required under the statute to reserve Sentech's rights to seek damages under the patents-in-suit.

As an industry leader, Schrader supplies TPM systems and subcomponents to the OEMs pursuant to standard contracts in the automotive industry, many of which require suppliers to provide a defense and indemnification against charges of patent infringement. Many of these contracts were formed under Michigan law. Sentech's assertions of infringement in this forum have triggered contractual demands from GM, Subaru and Mitsubishi that Schrader indemnify them against these charges. (See Exhibits 20, 21, and 22.) These communications have harmed Schrader's relationships with these customers and Schrader has incurred managerial, administrative

and legal expense addressing these demands for indemnification.  In addition, Sentech's contacts within this forum will continue to harm Schrader because they have a chilling effect on Schrader customers who might now be hesitant to purchase products under the cloud of a charge of infringement. (¶¶ 16 – 17 Wacker Declaration, Exhibit 6.)

Sentech asserts that it has already licensed Michelin North America, Inc. under the patents-in-suit (Page 4, Defendant's Brief).  Michelin manufactures automotive tires that include components of the TPM systems, and sells them throughout the U.S., including in this District (¶19 Wacker Declaration, Exhibit 6).  Like the licenses offered to the OEMs, Michelin is obligated to "mark" its products with the patent numbers under 35 U.S.C. § 287.  When these facts are considered in view of the relevant law, Schrader submits that this Court can exercise personal jurisdiction over Sentech in this case.

## III.   ARGUMENT

### A.   Legal Standards

#### 1.   *Federal Circuit law is controlling, rather than the law of the regional circuit.*

Personal jurisdiction in a declaratory-judgment action for non-infringement or invalidity is intimately related to patent law and is therefore governed by Federal Circuit law.  <u>Silent Drive, Inc. v. Strong Indus.</u>, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  In this case, because the parties have not conducted discovery, Schrader need only to make a *prima facie* showing that Sentech was subject to personal jurisdiction.  As such, the pleadings and affidavits are to be construed in the light most favorable to Schrader.  <u>Trintec Indus. v. Pedre Promotional Prods.</u>, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (citing <u>Silent Drive</u>, 326 F.3d at 1201).

### 2.    *The Federal Circuit's test for specific personal jurisdiction*

The Federal Circuit employs the following test to determine whether a district court has specific personal jurisdiction over a defendant in a patent case: whether jurisdiction exists under the state's long-arm statute; and if so, whether exercise of jurisdiction is consistent with the limitations of the Due Process Clause.  Trintec Indus., 395 F.3d at 1279.  Michigan's long-arm statute is "limited by due process and therefore, the statute and due process share the same outer boundary." Green v. Wilson, 455 Mich. 342, 350, 565 N.W.2d 813, 816 (1997).  Thus, the jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with Due Process.  Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1329 (Fed. Cir. 2008), *cert. denied*, 129 S.Ct. 2796 (2009).

The Federal Circuit employs the following three-prong test for determining whether jurisdiction over an out-of-state defendant comports with Due Process: (1) whether the defendant purposely directed its activities at the forum; (2) whether the claim arises out of or relates to the defendant's actions within the forum; and (3) whether the assertion of personal jurisdiction is reasonable and fair.  Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).  "The first two factors correspond with the 'minimum contacts' prong of the International Shoe analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  With respect to the last prong, the burden of proof is on Sentech, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in Burger King.  Avocent Huntsville, 552 F.3d at 1332, *citing* Breckenridge, 444 F.3d at 1363.  Importantly, Sentech has presented ***no*** arguments (compelling or otherwise) that the

presence of some other considerations would render jurisdiction unreasonable under the Burger King test in this case.


**B.**      **Analysis**

**_1._**      **_Sentech has purposely directed its activities at residents of this forum._**

Federal Circuit jurisprudence is clear: "letters threatening suit for patent infringement sent to the alleged infringer **_by themselves_** 'do not suffice to create personal jurisdiction.'" Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be '**_other activities_**' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." Silent Drive, 326 F.3d at 1202 (emphasis added). A survey of Federal Circuit law reveals rather limited precedent. Examples of these "other activities" include entering into an exclusive license agreement (see Breckenridge, 444 F.3d at 1366) and initiating judicial or extra-judicial patent enforcement within the forum (see Campbell Pet Co. v. Miale, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee whose "extra-judicial patent enforcement" include enlisting a third party to remove defendant's products from a tradeshow that was being held in the forum state.) In addition, the Federal Circuit has generally indicated that **_other undertakings_** which impose enforcement obligations with a party residing or regularly doing business in the forum can trigger personal jurisdiction. Avocent, 552 F.3d at 1335. However, the court of appeals has yet to identify the full scope of these undertakings that implicate jurisdiction.

Personal jurisdiction is appropriate here because Sentech's actions have gone beyond simply sending Schrader a few cease-and-desist letters. Sentech's continuous and systematic actions in the forum state have triggered contractual indemnification obligations on behalf of Schrader with respect to its customers regarding the TPM systems and subcomponents Schrader supplies them. In

addition, Sentech's licensee, Michelin, marks its products under 35 U.S.C. § 287 pursuant to its enforcement obligations under its license agreement with Sentech.  However, Schrader has not found a single case where the Federal Circuit has expressly ruled that these actions would constitute "other activities" such that personal jurisdiction has been found in the past.

In the absence of specific guidance from the Federal Circuit on whether Sentech's actions constitute "other activities," this Court should look to the framework provided by the United States Supreme Court to resolve the jurisdiction issue.  The Supreme Court's jurisprudence on Due Process and fair play dictate that personal jurisdiction is appropriate in this case.

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted).  "This principle ensures that a defendant will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  Burger King Corp., 471 U.S. at 475.  All factors must be considered in the basic inquiry of whether "the quality and nature of the activity in relation to the fair and orderly administration of the laws" is sufficient for a forum to exercise jurisdiction.  Int'l Shoe, 326 U.S. at 319.

Under this paradigm, the Supreme Court has also instructed that personal jurisdiction may be "proper because of [a defendant's] intentional conduct in [another State] calculated to cause injury to the plaintiff in [the forum state]."  Caulder v. Jones, 465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).  In Caulder, the Supreme Court held that the author and editor of an allegedly libelous article circulated in California, albeit written and edited in Florida, which "they knew would have a

potentially devastating impact upon [the plaintiff]," and which targeted a resident of California was not "mere untargeted negligence."  Id., at 788-90.  The Supreme Court held the non-resident defendants subject to personal jurisdiction in California since the defendants "intentional, and allegedly tortious actions were expressly aimed at California" and because the injury to the plaintiff was felt in California.  Yet, in Caulder, the defendants had no contacts with California other than phone calls and occasional visits.  Id. at 789.  Similarly, Federal Circuit law, informed by Supreme Court precedent, dictates that specific personal jurisdiction is appropriate over Sentech.

> **a.    Sentech's continuous and systematic contact with this forum harmed Schrader by triggering contractual demands to indemnify certain customers.**

In this case, Schrader has been directly injured in this forum by Sentech's acts that triggered contractual demands to indemnify Schrader's customers against the charges of infringement made in this forum (see Exhibits 20 – 22).  These indemnification obligations are standard in the automotive industry.  Sentech's letters to Schrader customers were clearly intended to trigger these obligations as a means of coercing an agreement with Schrader.  These communications were not random, fortuitous or attenuated contacts within the forum.  They have harmed Schrader's relationship with these customers and Schrader has incurred managerial, administrative and legal expense addressing these demands for indemnification.  In addition, Sentech's contacts within this forum will continue to harm Schrader because they have a chilling effect on Schrader customers who might now be hesitant to purchase products under the cloud of a charge of infringement.

Sentech manufactures and sells no products.  It has no business but that of attempting to license the patents-in-suit.  Indeed, its only business is attempting to coerce payments in lieu of litigation under the patents-in-suit.  If Sentech's systematic and continuous actions in this forum and

the resultant harm to Schrader do not trigger personal jurisdiction under the Supreme Court's Due Process Analysis, then Sentech and other patent trolls like them are simply immune to the Declaratory Judgment Act.  28 U.S.C. § 2201.  They can take calculated steps to interfere with the business of a party in a forum without fear of being subject to suit themselves in that forum.  While the Federal Circuit's existing framework does not appear to consider patent trolls like Sentech— small operations whose only apparent asset is a patent and whose only apparent business is sending demand letters to potential infringers in order to secure licensing fees—Schrader respectfully submits that the Supreme Court's holding in Caulder encompasses this situation where harm is manifested such that the exercise of personal jurisdiction is appropriate in this case.

Similarly, the Sixth and other circuit courts tend to allow personal jurisdiction when the injury to the plaintiff has been manifested in the forum and when fairness is not compromised thereby.  See, e.g., Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883 (6th Cir. 2002) (personal jurisdiction found where Pennsylvania defendant did not have a presence in Michigan.); Dudnikov v. Chalk and Vermillion Fine Arts Inc., 514 F.3d 1063 (10th Cir. 2008) (personal jurisdiction allowed in Colorado over California defendant because defendant's conduct in California caused injury to plaintiff in Colorado.); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000) (personal jurisdiction allowed in California over Georgia defendants because of the defendants "individualized targeting" against the California entity.)  Thus, the exercise of personal jurisdiction would not be inconsistent with precedent in this Circuit as well as others.

> **b.**   ***Michelin's obligations to mark licensed products sold in this forum is an undertaking related to the enforcement of the patents-in-suit.***

While the Federal Circuit has expressly stated that an undertaking (such as a license agreement) that imposes enforcement obligations with a party regularly doing business in the forum

constitutes "other activity" that can trigger personal jurisdiction, it has not considered whether the obligation to mark a licensed product qualifies as such activity. Yet common sense in light of both the Supreme Court and Federal Circuit's teachings says that it does.

Under the Patent Act, a patentee may provide the public with notice that a commercial product embodies a patented invention by affixing on the product itself, or if not physically possible, by affixing to a label or packaging material accompanying the product, the word "patent" followed by the patent number. 35 U.S.C. § 287(a). Commenting on the notice and marking provision of § 287(a), the Federal Circuit has explained:

> When a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer "notice of infringement." 35 U.S.C. § 287(a) (1994). This statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice.

Gart v. Logitech, Inc., 254 F.3d 1334, 1345-47 (Fed. Cir. 2001). See also Bonito Boats, Inc. v. Thundercraft Boats, Inc., 489 U.S. 141, 162, 109 S.Ct. 971, 983, 9 U.S.P.Q.2d 1847 (1989) ("The availability of damages in an infringement action is made contingent upon affixing a notice of patent to the protected article. 35 U.S.C. § 287. The notice requirement is designed 'for the information of the public,' and provides a ready means of discerning the status of intellectual property embodied in an article of manufacture or design. The public may rely upon the lack of notice in exploiting shapes and designs accessible to all.") (emphasis and other citations omitted).

Michelin sells its products in the state of Michigan under a license with Sentech. Michelin is obligated to mark its products with the licensed patent numbers under 35 U.S.C. § 287 so that Sentech can effectively enforce the patents-in-suit so as to receive damages upon adequate proof of infringement. The obligation to mark is an undertaking that imposes enforcement obligations with

respect to a party (Michelin) regularly doing business in this forum.  Avocent Huntsville, 552 F.3d at 1334 (Undertakings that impose enforcement obligations with a party regularly doing business in a forum can justify the exercise of personal jurisdiction).  Schrader submits that the obligations to mark under 35 U.S.C. § 287 constitutes "other activity" for purposes of this analysis.  Federal Circuit precedent, in combination with the teachings of the Supreme Court, dictate that the exercise of personal jurisdiction is appropriate under these circumstances.

### 2.   *The claim arises out of or relates to the activities in the forum.*

This is an action for declaratory judgment of non-infringement and invalidity.  In this case, the patentee, Sentech, is the Defendant and the claim asserted by Schrader relates to the "wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit."  Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360 (Fed. Cir. 1998).  Thus, the nature of the claim in a declaratory-judgment action is to "clear the air of infringement charges."  Id.  In this case, the cause of action arises out of or relates to the activities of the Defendant patentee in enforcing the patents-in-suit.  The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the Defendant patentee "purposely directed [such enforcement activities] at residents of the forum," and the extent to which the declaratory-judgment claim "arises out of or relates to those activities."  Avocent Huntsville, 552 F.3d at 1332, *citing* Breckenridge, 444 F.3d at 1363.  As noted above, Sentech purposely directed its enforcement activities (its only business) not only at Schrader, but it customers located in this forum as well.  Moreover, Sentech does not appear to dispute the fact that Schrader's declaratory-judgment action arises out of or relates to these activities.  Thus, Schrader respectfully asserts that this prong of the Federal Circuit's three-part test for establishing minimum contacts has been met.

### 3.     *The assertion of personal jurisdiction is reasonable and fair.*

As noted above, "[o]nce it has been decided that a defendant purposely established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Relevant factors include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  Burger King, 471 U.S. at 476-77.  Importantly, where a defendant who purposely has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable. Id. (internal citations omitted.)  Here, Sentech has presented no evidence and made no argument that other considerations render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in Burger King.  The first three factors tip decidedly in favor of exercising jurisdiction and the last two do not appear to be particularly relevant to this analysis.

### a.     *There is no burden upon Sentech litigating this dispute here.*

Michigan is the focal point for harm to Schrader.  Similarly, Michigan is a focal point for Sentech's proof of infringement and damages.  The accused products, and all documents and things necessary to prove Sentech's charges of infringement, and defend against them, and the Schrader personnel who are most knowledgeable about the accused products are located in this forum.  On the other hand, Sentech manufactures and sells no products.  It has no engineering, no sales, and no marketing staff.  Sentech does not compete with Schrader in the related market for TPM systems.  It

is essentially a "non-practicing entity" as that term relates to the patents-in-suit.  Sentech will have to travel to Michigan to conduct the discovery necessary to support its allegations of infringement and to investigate Schrader's claims of invalidity.  It cannot be overemphasized that, no matter where this dispute is litigated, it appears that the vast majority of the activity will occur in Michigan.  Thus, there is little burden on the Defendant in conducting this litigation in this District.  Indeed, it makes sense to litigate this case here.

> **b.**     ***Michigan has a strong interest in adjudicating this dispute here.***

Similarly, Michigan's interests in adjudicating this dispute in this District are manifest. Schrader is a leading manufacturer of the TPM systems and is the primary source supplier of these devices to Ford, GM, and Chrysler, as well as other OEMs that employ these devices in this district.  There is a strong nexus between the harm caused by Sentech's conduct in this case and the corporate residence of not only the Plaintiff, Schrader, but each of its customers, against whom Sentech has already attempted to assert the patents-in-suit.

> **c.**     ***Schrader needs this dispute resolved now and cannot
> tolerate further interference by Sentech in the marketplace.***

On the other hand, Sentech has made no efforts to practice the technology under the patents or otherwise enhance it.  There is no evidence that Sentech maintains any substantial documents, things, or other information outside of this district.  Sentech has presented no evidence to the contrary.  Sentech's lead counsel is located in the Eastern District of Texas—a jurisdiction where no documents, things or witnesses reside, but where there exists a reputation for patent-friendly litigation outcomes.  Sentech's calculated business strategy is to demand licenses from foreign

corporations in reliance on the Federal Circuit's pronouncements that its cease-and-desist letters, alone, will not subject it to suits in these forums.  In this context, Sentech is a classic patent troll.

Interestingly, Members of Congress have expressed their concerns regarding patent trolls when introducing patent reform legislation.  (See, e.g., Patent Reform Act of 2005, H.R. 2795, 109th Cong. (2005)) Representative Howard Berman stated that patent trolls have a "negative effect on innovation" and spoke of countless situations in which patent holders, making no effort to commercialize their inventions, lurk in the shadows until another party has invested substantial resources in a business or product that may infringe on the unutilized invention.  The patent troll then steps out of the shadows and demands that the alleged infringer pay a significant licensing fee to avoid an infringement suit.  151 CONG. REC. E1160-01 (daily ed. June 8, 2005) (Statement of Rep. Howard Berman).

Schrader needs this dispute resolved now and cannot tolerate further interference by Sentech in the marketplace.  The principles of fair play and substantial justice make it reasonable to subject companies like Sentech to personal jurisdiction in the forum in which they have attempted to coerce the alleged infringers into signing license agreements, have harmed residents by triggering contractual indemnification demands and where their licensees have obligations related to the enforcement of the patents-in-suit.  Each of the first three factors under the five-part Burger King test tip decidedly in Schrader's favor—especially where Sentech is silent on this issue.  The remaining two factors concerning the interstate judicial system's interest in obtaining the most efficient resolution of controversy and the shared interest of several states in furthering fundamental substantive social policies do not appear to affect the analysis in this case.

## IV.    CONCLUSION

There is no Federal Circuit case that directly addresses whether conduct that triggers contractual indemnification obligation on behalf of a party in a forum and obligations to mark licensed products sold in the forum with the patent numbers as a part of an enforcement obligation constitute "other activity" sufficient to trigger personal jurisdiction in this District.  The Federal Circuit has simply never considered these issues.  However, the teachings of the Federal Circuit, informed by the Supreme Court's framework of Due Process, fair play, and substantial justice under the circumstances of this case, dictate that personal jurisdiction over Sentech is appropriate here. For all of these reasons, Schrader respectfully requests that Defendant's Motion to Dismiss be denied.


Dated: October 8, 2010                              /s/Gerald E. McGlynn, III
                                                    Gerald E. McGlynn, III (P-41149)
                                                    Brian S. Pickell (P-57411)
                                                    BLISS MCGLYNN, P.C.
                                                    2075 West Big Beaver Road
                                                    Suite 600
                                                    Troy, Michigan 48084
                                                    Phone: (248) 649-6090
                                                    Facsimile: (248) 649-6299
                                                    E-mail: gemcglynn@ipdirection.com

                                                    *Attorney for Schrader Electronics Limited
                                                    and Schrader Electronics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2010, I electronically filed the foregoing with the

Clerk of the Court using the ECF system, which will send notification of the filing to the

following:

Kamron K. Lessani
Joseph L. Konheim
BLUM, KONHEIM, ELKIN & CEGLAREK
15815 West Twelve Mile Road
Southfield, MI 48076-3043

Brian L. Jackson
LAW OFFICE OF BRIAN L. JACKSON
1302 Waugh Drive #582
Houston, TX 77019

Tina M. Lessani
LESSANI & LESSANI LLP
163 Cypress Point Road
Half Moon Bay, CA 94019

/s/Gerald E. McGlynn, III
Gerald E. McGlynn, III (P-41149)
Brian S. Pickell (P-57411)
BLISS MCGLYNN, P.C.
2075 West Big Beaver Road
Suite 600
Troy, Michigan 48084
Phone: (248) 649-6090
Facsimile: (248) 649-6299
E-mail: gemcglynn@ipdirection.com