UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCHRADER ELECTRONICS, LTD., and
SCHRADER ELECTRONICS, INC.,

      Plaintiffs,

v.                                                    Case No. 10-cv-13127
                                                       Paul D. Borman
                                                       United States District Judge

SENTECH, INC.,

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This is a patent infringement case. Sentec, Inc. ("Defendant") is a Wisconsin corporation with its principal place of business in Wisconsin. Schrader Electronics, Ltd. and Schrader Electronics, Inc. ("Plaintiffs") are incorporated in Northern Ireland and Delaware, respectively, with their principal place of business in Auburn Hills, Michigan.

Plaintiffs filed their Complaint for Declaratory Relief on August 6, 2010 (Dkt. No. 1). In lieu of an Answer, Defendant filed the instant Motion to Dismiss for Lack of Personal Jurisdiction on September 7, 2010 (Dkt. No. 8). Plaintiffs responded on October 8, 2010 (Dkt. No. 13), and Defendant filed its reply on October 22, 2010 (Dkt. No. 14). Oral argument was held on December 15, 2010.

For the reasons that follow, the Court will grant Defendant's motion and dismiss Plaintiffs' Complaint without prejudice.

**II. BACKGROUND**

Defendant owns four patents[1] associated with devices used to monitor automobile tire pressure. Defendant is a "non-practicing entity," meaning that it does not manufacture or sell its patented devices; rather, Defendant's sole form of business is in licensing the rights to the patents it owns.

Plaintiffs manufacture tire pressure monitoring systems ("TPMS") for use in automobiles. Plaintiffs sell their TPMS to various automobile manufacturers pursuant to standard contracts, some of which require Plaintiffs to indemnify their customers from patent infringement claims.

Plaintiffs were contacted by Defendant in a letter dated March 16, 2009, addressed to Plaintiffs' Managing Director in Northern Ireland.[2] (Pls.' Resp. Ex. 7 - Letter). In this letter, Defendant explained that it believed certain aspects of Plaintiffs' TPMS infringed on the four patents at issue. The letter invited Plaintiffs to discuss the possibility of a licensing agreement with Defendants. Plaintiffs did not respond.

Defendant sent a second letter, dated February 4, 2010, to Plaintiffs' Vice President in Northern Ireland and to the London, U.K., office of intellectual property counsel for Plaintiffs. (Pls.' Resp. Ex. 8 - Letter). Plaintiffs' counsel responded on February 10, 2010, (Pls.' Resp. Ex. 9 - Letter) and several letters were subsequently exchanged between Plaintiffs' counsel in

---

[1]The patents at issue are U.S. Patent No. 5,483,826 (issued Jan. 16, 1996); U.S. Patent No. 5,728,933 (issued Mar. 17, 1998); U.S. Patent No. 6,357,292 (issued Mar. 19, 2002); and U.S. Patent No. 6,672,151 (issued Jan. 6, 2004).

[2]Plaintiffs were first contacted by Defendant regarding these patents on June 24, 2002. (Comp. ¶ 16). However, Plaintiffs concede that the only contacts pertinent to the instant motion are the letters discussed *infra*. (Pls.'s Resp. at 4).

Denver, Colorado, and Defendant's counsel in Houston, Texas[3]. The correspondence reveals that Plaintiffs did not believe Defendant's infringement claim was meritorious, and that Defendant was unwilling to relent in its pursuit of royalty fees. Finally, in a series of letters dated from May 25-28, 2010, Defendant contacted several customers of Plaintiffs, including General Motors in Detroit, Michigan, and Ford Motor Company in Dearborn, Michigan. (Pls.' Resp. Exs. 13-18 - Letters).

The only letters that were actually sent into Michigan were those letters mailed to Plaintiffs' customers, General Motors and Ford. All of Defendant's correspondence with Plaintiffs was mailed either to the corporate offices in Northern Ireland, or to Plaintiffs' intellectual property counsel in Denver, Colorado.

After Defendant began contacting Plaintiffs' customers regarding the patent infringement claims, Plaintiffs initiated the instant suit seeking a declaratory judgment that its TPMS do not infringe on Defendant's four patents.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

Because substantive patent law and jurisdictional issues are intertwined in this case, the Court applies Federal Circuit law. *Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). Discovery has not yet been conducted, and so the pleadings and affidavits are construed "in the light most favorable to the [Plaintiffs,]" and Plaintiffs only need to "make a prima facie showing that the [Defendant was] subject to personal jurisdiction." *Silent*

---

[3]The Court notes that Houston is located in the Southern District of Texas, not the "patent-friendly" Eastern District of Texas, as Plaintiffs state in their brief. (Pls.' Br. at 15).

3

*Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (citations and punctuation omitted).

### B.  Personal Jurisdiction

To determine personal jurisdiction over an out-of-state defendant, the Court follows a two-part inquiry: (1) does Michigan's long-arm statute permit service of process; and (2) does personal jurisdiction violate due process.  *Avocent*, 552 F.3d at 1329.  Because Defendant's arguments are limited to due process, the Court will not address the first prong of this analysis.

"Due process requires that, for the forum state's exercise of personal jurisdiction to be proper, the out-of-state defendant have 'minimum contacts' with the forum state." *Silent Drive*, 326 F.3d at 1201.  In a patent case, personal jurisdiction exists, and due process is satisfied, when the defendant's contacts meet three factors:

> (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair."

*Id*. at 1201-02.  Once the first two prongs are satisfied, the burden of proof is on the defendant to "present a compelling case that" jurisdiction is unreasonable.  *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006).

Letters that threaten infringement litigation, "without more," are insufficient for personal jurisdiction.  *Silent Drive*, 326 F.3d at 1202.

> [E]ven though the letters are "purposefully directed" at the forum and the declaratory judgment action "arises out of" the letters, letters threatening suit for patent infringement sent to the alleged infringer by themselves "do not suffice to create personal jurisdiction" because to exercise jurisdiction in such a situation would not "comport with fair play and substantial justice."

*Id.* (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359-60 (Fed. Cir. 2003)).[4] Therefore, personal jurisdiction exists only if there are "'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Id.*

### IV. ANALYSIS

The issue that the Court must determine is whether Defendant engaged in "other activities," either in or directed toward Michigan, that would make the Court's exercise of personal jurisdiction "reasonable and fair." The Federal Circuit provided guidance on this issue in *Breckenridge*, 444 F.3d at 1363-67. In summary, the Circuit stated that:

> a defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there. . . . The same is true where the defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensees' sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income.

*Id.* at 1366 (citations omitted).

Plaintiffs argue that Defendant has engaged in "other activities" in Michigan by entering into a licensing agreement with Michelin North America, which is not headquartered in Michigan but does conduct business in this state.

> Where a defendant-licensor has a relationship with an exclusive

---

[4] Defendant's Reply incorrectly states that infringement letters alone do not constitute "minimum contacts." (Defs.' Reply at 1-2). *Silent Drive* clearly explains that infringement letters do satisfy the first two prongs of the three-part personal jurisdiction analysis, which are the only two prongs that relate to the "minimum contacts" analysis. 326 F.3d at 1202. It is the third prong that is not satisfied by infringement letters alone, and this prong relates to the "fair play and substantial justice" inquiry, which is separate from minimum contacts. *Id.*

> licensee headquartered or doing business in the forum state, the
> inquiry requires close examination of the license agreement. In
> particular, our case law requires that the license agreement
> contemplate a relationship beyond royalty or cross-licensing
> payment, such as granting both parties the right to litigate
> infringement cases or granting the licensor the right to exercise
> control over the licensee's sales or marketing activities.

*Breckenridge*, 444 F.3d at 1366. Plaintiffs argue that Defendant has engaged in "other activities" in Michigan because Michelin is required, under 35 U.S.C. § 287(a), to mark its products with Defendant's patent numbers. Plaintiffs argue that this is related to enforcement of Defendant's patents, because damages in a patent suit are limited to "those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001).

The Federal Circuit requires "other activities" to "relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334 (emphasis in original). However, the Circuit also requires at least some affirmative act by the defendant, like "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id*. The type of enforcement obligation that satisfies this analysis appeared in *Metabolite*:

> As part of the license agreement, Metabolite granted PamLab the
> right to sue for patent infringement with Metabolite's written
> consent, and the parties agreed to "discuss in good faith the
> appropriate action, if any, with respect to third party infringers of
> the Licensed Patents and to cooperate reasonably in any
> enforcement actions". Metabolite granted PamLab "full control of
> the prosecution or maintenance" of any patent or application that
> Metabolite abandons or permits to lapse and agreed to provide
> PamLab with an executed power of attorney for that purpose.
> Metabolite further agreed to "provide consultation to PamLab in

>    the science, medicine and marketing of vitamins and related products, from time to time."

444 F.3d at 1366-67.

The agreement in the instant case, by contrast, does not impose any enforcement obligation on Defendant's licensee. The "enforcement" activity Plaintiffs refer to is purely an obligation of the United States patent laws, and not an obligation arising out of Defendant's contract with its licensee. Thus, the Court finds that it is not sufficient to qualify as "other activities" under *Avocent* and *Breckenridge*.

Plaintiffs also argue that personal jurisdiction is fair and just because Defendant's intentional conduct will result in injury within this state. Specifically, Plaintiffs state that Defendant's letters to its customers triggered contractual indemnification provisions with those customers, which "have harmed [Plaintiffs'] relationship with these customers and [has caused Plaintiffs] managerial, administrative and legal expense addressing these demands for indemnification." (Pls.' Resp. at 10). Plaintiffs cite *Calder v. Jones*, 465 U.S. 783 (1984), for the proposition that jurisdiction can be proper when based on "intentional conduct [by Defendant] calculated to cause injury to [Plaintiffs]." *Id*. at 791.

The Federal Circuit previously addressed this argument in *Breckenridge* and again in *Avocent*. *See Breckenridge*, 444 F.3d at 1362; *Avocent*, 552 F.3d at 1340. In both of those cases, the Federal Circuit found this argument unavailing because the "letters would neither be *unjustifiable* nor *unfair* if the implication of infringement contained therein is true." *Id* (emphasis in original). Likewise, the Court finds that Defendant's letters to Plaintiffs' customers in this case did not create personal jurisdiction over the Defendant under *Calder*, because the claimed infringement in Defendant's letters may not be unjustifiable or unfair.

## V.  CONCLUSION

For the reasons stated above, the Court will:

1. **GRANT** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction; and

2. **DISMISS** Plaintiffs' Complaint **WITHOUT PREJUDICE**.

**SO ORDERED.**

        S/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

Dated:  January 12, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 12, 2011.

        S/Denise Goodine
        Case Manager